STATE OF MINNESOTA

IN SUPREME COURT

A23-0914

Court of Appeals

Thissen, J.
Took no part, Gaïtas, J.

Tescil Romalis Mason-Kimmons

Appellant,

vs.

Filed: November 5, 2025
Office of Appellate Courts

State of Minnesota

Respondent.

_____

Cathryn Middlebrook, Chief Appellate Public Defender, Michael McLaughlin, Assistant State Public Defender, Saint Paul, Minnesota, for appellant.

Keith Ellison, Attorney General, Saint Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Brittany D. Lawonn, Senior Assistant County Attorney, Minneapolis, Minnesota, for respondent.

_____

S Y L L A B U S

Because a reasonable probability exists that appellant would have proceeded to trial but for his trial counsel's constitutionally deficient advice—specifically, that he should plead guilty due to counsel's lack of trial preparedness—appellant has established prejudice for purposes of his ineffective assistance of counsel claim. The district court

1

therefore abused its discretion by denying his postconviction petition to withdraw his guilty plea.

Reversed and remanded.

O P I N I O N

THISSEN, Justice.

In September 2017, John Lacy was shot on a street corner in Minneapolis in broad daylight. Appellant Tescil Romalis Mason-Kimmons was indicted for first-degree murder in connection with the shooting and faced a potential life sentence. Prior to trial, Mason-Kimmons's attorney stated that he was unprepared, that he would provide ineffective assistance of counsel if the case went to trial, and that Mason-Kimmons would not get a fair trial if counsel was forced to proceed. Mason-Kimmons subsequently pled guilty to second-degree intentional murder and was sentenced to 366 months in prison.

Mason-Kimmons filed a direct appeal, which was stayed to allow him to seek postconviction relief. In his petition for postconviction relief, Mason-Kimmons contended that he should be allowed to withdraw his plea, claiming, among other things, ineffective assistance of counsel because his attorney was unprepared and provided deficient advice during the plea process. In a prior appeal, Mason-Kimmons established that his trial counsel's performance fell below an objective standard of reasonableness when he advised Mason-Kimmons to plead guilty because he was unprepared for trial. *Mason-Kimmons v. State* (*Mason-Kimmons II*), No. A21-0696, 2022 WL 589257, at *3–5 (Minn. App. Feb. 28, 2022). The court of appeals remanded the case to the district court to address whether Mason-Kimmons was prejudiced by his attorney's deficient performance. The

2

district court determined that Mason-Kimmons was not prejudiced by the deficient advice and the court of appeals agreed. We granted review. The sole issue before us is whether Mason-Kimmons was prejudiced by his lawyer's constitutionally deficient performance.

We conclude that there is a reasonable probability that Mason-Kimmons would have gone to trial but for his trial counsel's advice that Mason-Kimmons should plead guilty because counsel was unprepared for trial. Accordingly, we hold that Mason-Kimmons was prejudiced by his trial counsel's deficient performance. Because both prongs of an ineffective assistance claim have been met in this case, we remand to the district court to allow Mason-Kimmons to withdraw his guilty plea.

## FACTS

### *Background*

On September 15, 2017, John Lacy was shot on the corner of Chicago and Franklin Avenues, adjacent to Peavey Park, in Minneapolis. The shooter, caught on surveillance video from a camera located across the street from the incident, wore a plain blue sweatshirt with the hood pulled up and black pants. The video shows the shooter cross a park adjacent to the intersection, then move behind Lacy, raise his right arm, and fire once into the back of Lacy's head as a city bus idled nearby. Lacy died from the gunshot, which later investigation found to be consistent with a .38-caliber bullet. Law enforcement never recovered a bullet casing. Police investigation and surveillance video show that the shooter arrived at and left from the scene in a green Subaru. E.R.D., Mason-Kimmons's then-girlfriend, owned the Subaru.

3

During their investigation, the police discovered that Lacy and Mason-Kimmons had been feuding for over a year. Before the murder, Mason-Kimmons assaulted Lacy twice. Both times E.R.D. was present. Law enforcement arrested Mason-Kimmons after the second assault. While in jail for that offense, Mason-Kimmons made a recorded phone call to E.R.D. during which he told her that he would kill Lacy. Mason-Kimmons was released the next day. Lacy was shot two days later.

The police executed a search warrant on E.R.D. and Mason-Kimmons's shared apartment. During the search they found .38-caliber ammunition and a blue hooded sweatshirt.[1] The police never recovered the gun used in the shooting.

Mason-Kimmons was arrested and the State charged him with second-degree murder. Later, a grand jury indicted Mason-Kimmons for first-degree murder, Minnesota Statutes section 609.185(a)(1) (2024), and being an ineligible person in possession of a firearm, Minnesota Statutes section 624.713, subdivision 1(2) (2024). E.R.D. was also indicted for first-degree murder under an aiding and abetting theory of liability. A public defender originally represented Mason-Kimmons, but after he was indicted, Mason-Kimmons hired a private lawyer. A trial date was set for August 13, 2018.

The State provided discovery materials to Mason-Kimmons's trial counsel. One batch of discovery included police interviews with eyewitnesses to the murder: the bus driver who called 911, bus passengers, and others near the shooting. These eyewitnesses

---

[1] The State described the sweatshirt as "a blue hooded sweatshirt similar to the one worn by the male shooter." Mason-Kimmons described the sweatshirt as having the words "Washburn Millers" in orange lettering across the front.

all described the shooter as a tall (six-foot to six-foot-two-inch) thin, lanky Black man. One of the witnesses also described the shooter as being in his mid-to-late twenties. Another witness said the shooter had a "very, very dark black" complexion. Mason-Kimmons also noted that in the surveillance video the shooter appears to have been the same height as or taller than Lacy, who was six-feet tall, though relative height is difficult to ascertain because of a slope in the sidewalk. The surveillance video shows the shooter's hand, which the defense asserted is darker than Mason-Kimmons's skin tone. Mason-Kimmons is a five-foot-ten-inch lighter-skinned Black man with a self-described "chubby" build who was 32 years old at the time of the shooting.

Police continued to investigate the shooting and successfully identified other individuals seen on the surveillance video. These individuals were uncooperative, stated that they saw nothing, or lacked credibility. One witness, W.S., reportedly first told a defense investigator that Mason-Kimmons was not the shooter. W.S. then told police he was not in Peavey Park at the time and knew nothing about Lacy's death. After being arrested for a probation violation, W.S. changed his story, telling police in mid-June that Mason-Kimmons was the shooter, and indicating that he hoped testifying would help with his probation violation.

Some of these additional witness interviews and W.S.'s post-arrest recantation were included in a 397-page discovery disclosure that was made available to the defense on August 1, 2018, less than two weeks before trial was set to begin on August 13, 2018. Defense counsel did not pick up the documents until August 9, four days before the trial.

Of the additional witnesses whose statements were included in this discovery, Mason-Kimmons and his trial counsel had only contacted W.S. before the State's disclosure.

Mason-Kimmons's trial counsel objected to the August 13, 2018 trial date throughout the proceedings. At the time the trial was initially scheduled, trial counsel requested, off-the-record, a change in the trial date. He later filed three continuance motions between May and August.

The first continuance motion was filed on May 31, 2018. Defense counsel requested a continuance because the defense had not received some discovery materials, was seeking the identity of a person who had information about the shooting, and had not finished its investigation. Further, Mason-Kimmons's trial counsel had a busy trial schedule over the summer and was concerned about preparation. On June 1, the district court held a hearing, and, on June 18, it denied the motion for a continuance. The district court also ordered the State to set up a confidential meeting between Mason-Kimmons's trial counsel and the person whose identity he sought, if that person agreed to speak with trial counsel.

On August 1, the State offered Mason-Kimmons a plea deal: plead guilty to second-degree intentional murder and receive a sentence of 366 months in prison. Mason-Kimmons did not respond to the proposal at that time.

On August 6, Mason-Kimmons's trial counsel filed several motions. These included motions requesting a jailhouse informant's identity and a gun store surveillance video. Trial counsel also moved to suppress intercepted phone calls, evidence taken from Mason-Kimmons's home, and cellphone and cell tower records. Mason-Kimmons's trial counsel also filed a second continuance motion. He reiterated his May 31 justifications for

6

this second continuance request and made a new allegation that the State was withholding evidence.

The district court held a hearing on these motions on August 9, the same day Mason-Kimmons's trial counsel retrieved the second batch of discovery. During the hearing, Mason-Kimmons's trial counsel stated that there was not enough time before the August 13 trial date to get through the newly released discovery. He also explained that he had not contacted witnesses who were the "essence of the case" and potentially exculpatory. Finally, counsel noted that, in chambers that same day, he heard for the first time that W.S. had recanted. Beyond witness issues, Mason-Kimmons's trial counsel stated he had not prepared for cross-examination or impeachment. He asserted:

> If you order us to go to trial next week, I mean, it's basically tantamount to saying okay, he's going to be found guilty because his lawyer is telling you right here in court that I'm unprepared. I'm not prepared to try the case next week. I will violate my duty to my client. I will violate the code of ethics if we go to trial. It will be ineffective assistance of counsel. It will deny him his right to a fair trial. It would deny him his right to due process.

The district court disagreed. The district court stated that Mason-Kimmons's trial counsel was prepared or could become prepared in time for opening statements. It denied the continuance. It did not rule on the other motions related to discovery and evidence suppression. Mason-Kimmons interjected twice during this hearing. First, he asked, "[i]f I want to go to trial and my attorney is not ready, isn't that ineffective counsel?" Second, he stated that, "I think I should be able to get a fair trial."

7

On August 10, one day after the district court denied the second continuance request, the State and Mason-Kimmons's trial counsel engaged in plea negotiations for the first time.

On August 13, 2018, the scheduled trial date, Mason-Kimmons's trial counsel requested a continuance for the last time. Among other things, he argued that the August 1 discovery—which trial counsel had only picked up four days prior—referred to a potential alternative perpetrator that the defense did not have time to investigate. Mason-Kimmons's trial counsel stated that the district court "can't just make me ready by ordering me to show up," and he threatened to go to the court of appeals if the district court denied his continuance motion. When the district court indicated its intent to begin trial that morning, the parties went off the record to attempt to resolve the case.

After about an hour and a half of off-record negotiations,[2] Mason-Kimmons pled guilty to second-degree murder for Lacy's death. He agreed to a sentence of 366 months in prison in exchange for the State dropping two charges against him and offering E.R.D. a reduced charge and probationary sentence. Before Mason-Kimmons pled guilty, he and the district court had the following exchange:

> THE DISTRICT COURT: And obviously it's a really important decision you made going forward. And it's your decision to make. It's not mine, it's not [your trial counsel's]. I want to make sure that among the options that you have, that this is the option that you want to go forward with.
>
> THE DEFENDANT: Correct.

---

[2] We note a typographical error in the record: the court reporter indicated the parties returned at 11:30 p.m. instead of 11:30 a.m. All evidence supports that the parties engaged in a roughly hour and a half negotiation from 9:50 a.m. to 11:30 a.m.

> THE DISTRICT COURT: And like I said, it's a big decision and I know there's been some time pressure. I don't want to pressure you into it. And I know it seems like I've been trying to move the case forward. But as I mentioned a couple of times, I recognize this is a big case for you and for [your trial counsel]. And I don't want the pressure of the moment to be the only thing that allows you to make your decision. Do you know what I'm saying?
>
> THE DEFENDANT: I hear what you're saying, but you didn't give us no time to speak to the other witnesses, though. Yeah.

At sentencing, Mason-Kimmons restated his reasons for pleading guilty:

> Yeah. I'd like to say I apologize to my family and friends, and I appreciate their support. I'd also like to let them know that I apologize for taking the plea agreement, but I wasn't going to get a fair trial. The prosecuting attorney was withholding evidence, who had it for two months, and gave it to my attorney two weeks before, so we weren't prepared for trial, which made ineffective counsel, so that's why I'm taking this deal.

The district court sentenced Mason-Kimmons to 366 months in prison.

### *First Appeal and Postconviction Proceeding*

Mason-Kimmons filed a direct appeal from his conviction, which the court of appeals stayed to allow Mason-Kimmons to pursue postconviction relief. In his postconviction petition, Mason-Kimmons argued that he should be allowed to withdraw his guilty plea because (1) his plea was involuntary because his trial counsel's failure to adequately prepare for trial pressured him into an unconstitutional choice between pleading guilty or going to trial without prepared counsel, (2) the district court failed to properly investigate whether the leniency offered to E.R.D. made Mason-Kimmons's plea involuntary, and (3) Mason-Kimmons's trial counsel's failure to adequately prepare rendered him unable to offer effective counsel and meaningful advice during the plea

9

negotiations. The district court denied the postconviction petition without an evidentiary hearing.

Mason-Kimmons appealed. The court of appeals lifted the stay, and, in its opinion, affirmed the summary dismissal of Mason-Kimmons's involuntary plea claims. *State v. Mason-Kimmons* (*Mason-Kimmons I*), No. A18-2145, 2020 WL 2517067, at *4–6 (Minn. App. May 18, 2020).[3] It reversed, however, on the ineffective assistance of counsel claim. *Id.* at *8. It found that Mason-Kimmons had made "at least a prima facie showing of ineffective assistance of counsel" during plea negotiations because his trial counsel's unpreparedness made him "unable to adequately consult with [Mason-Kimmons] about the case." *Id.* at *7. The court of appeals remanded to the district court to hold an evidentiary hearing. *Id.* at *7–8.

***Remand and Second Appeal***

The district court held an evidentiary hearing on September 28, 2020, at which both Mason-Kimmons and his trial counsel testified. Mason-Kimmons testified that his trial counsel showed through his actions and explicit statements that he was unprepared for trial.

---

[3]     In *Mason-Kimmons I*, the court of appeals concluded that Mason-Kimmons voluntarily entered his guilty plea. 2020 WL 2517067, at *4–5. It rejected Mason-Kimmons's argument that he faced a " 'Hobson's choice' " of either going to trial with an unprepared attorney or pleading guilty. *Id.* In doing so, the court of appeals did not address the implications of Mason-Kimmons's trial counsel's unpreparedness on Mason-Kimmons's constitutional right to an effective attorney but focused solely on the fact that Mason-Kimmons faced no "improper pressures" when he pled. *Id.* at *5. It based this decision primarily on the colloquy between Mason-Kimmons and the district court in which Mason-Kimmons affirmed he was not threatened into pleading guilty. *Id.* The court of appeals also rejected the idea that the third-party leniency offered to E.R.D. produced an involuntary plea. *Id.* at *6. Mason-Kimmons did not file a petition to review the court of appeals' decision that his plea was voluntary after *Mason-Kimmons I*.

10

According to Mason-Kimmons, his trial counsel's objective unpreparedness and advice were the reason he pled guilty because his only options were to "take the plea offer or go to trial with a lawyer that's ineffective assistance of counsel, violate your [constitutional rights] and get life in prison." When asked if he would have pled guilty if his trial counsel had been prepared, Mason-Kimmons said he "wouldn't even been thinking about pleading guilty" and that he had "zero doubt" he would have gone to trial.

Mason-Kimmons's trial counsel, for his part, testified that he had been unprepared and unwilling to go to trial that day. He said that he advised Mason-Kimmons to plead guilty because he would be unable to provide him with a fair trial. Trial counsel echoed Mason-Kimmons's testimony, saying he "absolutely" believed Mason-Kimmons would have proceeded to trial if he had been prepared.

The State put on no witnesses. The parties subsequently briefed the issue of ineffective assistance of counsel. In November, the defense submitted exhibits, including summaries of interviews with four witnesses, W.S., Y.E., Y.S., and M.F., that a defense investigator conducted in 2020.[4]

The district court again denied Mason-Kimmons postconviction relief, stating that Mason-Kimmons had not proven either prong of an ineffective assistance of counsel claim

---

[4] The four witness interviews the defense investigator conducted in 2020 were all helpful to the defense's case, with the witnesses either directly stating that Mason-Kimmons was not the shooter, recanting or altering statements against Mason-Kimmons which they had previously made to the police, or otherwise alleging police misconduct. Because these interviews were unavailable at the time Mason-Kimmons pled guilty—and thus unavailable at the time any prejudice would have occurred—we do not consider the substance of these interviews in our analysis.

under *Strickland v. Washington*, 466 U.S. 668, 687 (1984) (holding that, to establish a claim of ineffective assistance of counsel, a defendant must show both that the attorney's performance was deficient (prong 1) and that this deficient conduct caused prejudice (prong 2)). The district court found that Mason-Kimmons's trial counsel "gave Mr. Mason-Kimmons the best advice he could under the practical circumstances of the case" and that "Mr. Mason-Kimmons fail[ed] to provide any evidence or alleged facts that demonstrate that the outcome of the *trial* would have" been in his favor. (Emphasis added.)

Mason-Kimmons again appealed and the court of appeals reversed. *Mason-Kimmons II*, 2022 WL 589257, at *6. The court of appeals held, and the State agreed, that Mason-Kimmons's trial counsel's advice to Mason-Kimmons to plead guilty because he was unprepared for trial fell below an objective standard of reasonableness, thus satisfying prong 1 of *Strickland*. *Id.* at *3–4. The court of appeals concluded that counsel should only advise a client to plead guilty after appropriately investigating and studying the case—both steps trial counsel claimed he did not complete. *Id.* at *4. The court of appeals found the district court's failure to examine the effect of Mason-Kimmons's trial counsel's deficient advice "particularly troubling" considering trial counsel's explicit testimony that he told Mason-Kimmons to plead guilty because he thought his unpreparedness would hurt Mason-Kimmons at trial and, if he had been prepared, he believed Mason-Kimmons would have gone to trial. *Id.*

Turning to the second *Strickland* prong, the court of appeals determined that the district court applied the wrong standard in assessing prejudice. *Id.* at *6. The court of appeals reasoned that the district court erroneously considered whether the result in Mason-

12

Kimmons's *trial* would have been different but for his trial counsel's objectively unreasonable advice, when the proper standard is "whether Mason-Kimmons *would have pleaded not guilty* but for counsel's unreasonable advice." *Id.* at \*5 (emphasis in original). The court of appeals concluded that it could not "resolve this issue on appeal" because of the district court's insufficient factual findings. *Id.* The court of appeals remanded to the district court to make relevant findings of fact and "to apply the correct prejudice-prong standard." *Id.* at \*6.

### Second Remand and Third Appeal

On remand for the second time, the district court held evidentiary hearings on July 14, 2022, and October 19, 2022. During these hearings, the trial prosecutor, defense investigator, recanting jailhouse informant M.W., Mason-Kimmons, and Mason-Kimmons's trial counsel testified.

Much of the evidence from these evidentiary hearings has been addressed above: the State believed it had a strong case, the defense believed that the evidence showed Mason-Kimmons was not the shooter, and Mason-Kimmons would not have pled guilty if his trial counsel had been prepared. In their testimony, the attorneys and Mason-Kimmons described what happened during plea negotiations. The prosecutor testified that "[t]here was never any discussion about the—the term that Mr. Mason-Kimmons was to serve, the offense to which he was going to plead. All of the negotiations focused on what the resolution was going to be for [E.R.D.]" When directly asked at this hearing if he believed Mason-Kimmons pled guilty because Mason-Kimmons's trial counsel was not prepared,

13

the prosecutor responded, "No," but conceded, "I certainly wasn't a part of their negotiations."

Mason-Kimmons and his trial counsel, in their testimony, reiterated that Mason-Kimmons would not have taken the plea agreement had his trial counsel been prepared for trial, that a motivating factor in taking the plea agreement was Mason-Kimmons's trial counsel's compounding unpreparedness due to the August 1 discovery and lack of a continuance, and that Mason-Kimmons "didn't want to take this plea agreement" but felt he had no choice. Specifically, Mason-Kimmons testified that his trial counsel's statements that counsel was unprepared for trial and could not guarantee Mason-Kimmons's constitutional trial rights "made [Mason-Kimmons] consider taking a plea agreement" because the alternative was to "[g]o to trial and face life in prison with a—with a lawyer who's unprepared." Mason-Kimmons's attorney, besides testifying that he "anticipated [the evidence] that would be developed at trial would be exonerating," also believed in taking this case to trial because he "didn't think [Mason-Kimmons] was guilty."

During the briefing period following the hearings, the State asked the district court to "make credibility determinations [on the testimony] and weigh the evidence accordingly."[5]

---

[5]    The State urged the district court to find that:

[The prosecutor]'s testimony is credible, relevant, and weighty. [The defense investigator's] testimony is generally inadmissible and irrelevant; [M.W.'s] testimony is also irrelevant and speculative. [Mason-Kimmons's trial counsel's] testimony should not be credited as it is largely contradicted by

14

The district court again denied Mason-Kimmons's postconviction petition, concluding that Mason-Kimmons failed to prove that there was a reasonable probability that he would have insisted on going to trial but for trial counsel's objectively unreasonable advice. The district court based this conclusion on four main points.[6]

First, the district court found that Mason-Kimmons did not have as strong of a case at the time of trial as he claimed. In support of this finding, the district court cited W.S.'s changed statement shortly before the trial date asserting that Mason-Kimmons was the shooter, and noted that the defense did not produce any witness to testify that the shooter's appearance did not match Mason-Kimmons. The district court also reiterated its previous conclusion that "there had been ample time to locate relevant witnesses and that there was only a minimal chance of locating those witnesses if the case was continued." In addition, the district court suggested that it was not trial counsel's level of preparedness driving his behaviors and statements, but "a common strategy for defense lawyers is to stretch out the case as long as they can since the State's case often gets worse with time."

Second, the district court determined that evidence from additional witnesses, even if found, would not have changed Mason-Kimmons's mind during plea negotiations. The district court reasoned that because, at the time of plea negotiations, W.S. had changed his

---

the record. And [Mason-Kimmons's] testimony is self-serving; moreover, his post-hoc statements alone cannot entitle him to relief.

[6] Mason-Kimmons also submitted a motion to correct his sentence on October 17, 2022, which the court denied in its order. This denial was affirmed, *Mason-Kimmons v. State* (*Mason-Kimmons III*), No. A23-0914, 2024 WL 1251736, at *5–6 (Minn. App. Mar. 25, 2024), and is not before us.

statement and claimed that Mason-Kimmons was the shooter, any later statements W.S. gave indicating Mason-Kimmons was not the shooter were unhelpful.[7] The district court further stated that other witnesses' statements would not have affected Mason-Kimmons's mindset because they were not included in the State's case against Mason-Kimmons or were known and available to the defense before the scheduled trial date.

Third, the district court noted that its rulings on certain pretrial motions—including allowing the State to introduce evidence of the previous fights between Lacy and Mason-Kimmons, the jail call in which Mason-Kimmons told E.R.D. he planned to kill Lacy, and the items taken from Mason-Kimmons's home—did not go in Mason-Kimmons's favor and would have factored into his decision to seek a plea bargain.[8] The district court found that Mason-Kimmons had an "interest in reaching a plea deal *before* [his trial counsel's] declaration of unpreparedness" and that the leniency shown to E.R.D. "also contributed" to the plea.

Fourth, the district court observed that the State had a strong case. Finding the prosecutor's testimony about the strength of the State's case credible and the likely sentence for first-degree murder to be life in prison without the possibility of parole, the district court determined that Mason-Kimmons would have pled guilty regardless of his

---

[7] W.S. withdrew his recantation in 2020, claiming once again that Mason-Kimmons did not shoot Lacy. That recantation is not relevant to our prejudice inquiry since it was unknown to the parties at the time of the plea in August 2018.

[8] Mason-Kimmons's trial counsel raised these issues in his motions filed August 6, 2018. Despite the district court stating that the "PRETRIAL RULINGS DID NOT GO IN MR. MASON-KIMMONS'[S] FAVOR," the district court never ruled on most of these motions.

trial counsel's conduct. In its order, the district court mentioned, in passing, Mason-Kimmons's and his trial counsel's assertions that they would have gone to trial had trial counsel been prepared to do so. The district court did not mention Mason-Kimmons's or his trial counsel's explicit testimony that Mason-Kimmons would have gone to trial had the State not provided substantial discovery at the last minute and had his trial counsel been adequately prepared. The district court made no express credibility determinations about Mason-Kimmons's or his trial counsel's testimony.

Mason-Kimmons appealed for a third time. The court of appeals first reviewed the district court's factual findings for clear error. *See Mason-Kimmons v. State* (*Mason-Kimmons III*), No. A23-0914, 2024 WL 1251736, at *3 (Minn. App. Mar. 25, 2024). It determined that two conclusions in the order were clearly erroneous. First, the court of appeals rejected the district court's finding that negative evidentiary rulings persuaded Mason-Kimmons to plead guilty because the district court never made those rulings. *Id.* It also determined that the district court's finding that Mason-Kimmons expressed interest in reaching a plea deal before his trial counsel's declaration of unpreparedness was contrary to the record and, as such, clearly erroneous.[9] *Id.*

The court of appeals also concluded, however, that the individual errors were not determinative. *Id.* Instead, it affirmed the district court after summarizing all the facts the court of appeals found relevant and, "[v]iewing these facts together," determined that there

---

[9]     Neither party appealed nor disputed these clear error determinations. We agree with the court of appeals that these findings are clearly erroneous because they lack evidentiary support. *See Riley v. State*, 819 N.W.2d 162, 167 (Minn. 2012) (stating that clear error exists where determinations "are not factually supported by the record").

17

was no reasonable probability that, but for counsel's deficient advice, Mason-Kimmons would have insisted on going to trial. *Id.* at \*4–5. Mason-Kimmons petitioned for review on whether he was prejudiced by his trial counsel's deficient behavior as part of his ineffective assistance of counsel claim, and we granted review.[10]

## ANALYSIS

This case comes to us from the district court's decision denying Mason-Kimmons's petition for post-conviction review. Mason Kimmons claims that he should be allowed to withdraw his guilty plea because of his trial counsel's ineffective representation in advising

---

[10] We also granted review on two other issues Mason-Kimmons raised in his petition for review, but we have no need to reach either of them here. First, Mason-Kimmons argued that the district court committed structural error and that prejudice under the second prong of *Strickland* should be presumed. *See United States v. Cronic*, 466 U.S. 648 (1984) (describing structural error in the ineffective assistance of counsel context). Based on our resolution of the case, we do not address the structural error argument.

Second, we accepted review on the separate question of whether the court of appeals acted improperly in independently finding its own facts during its review. It is true that "appellate courts may not sit as factfinders" and cannot "make or modify findings of fact." *Dunn v. Nat'l Beverage Corp.*, 745 N.W.2d 549, 555 (Minn. 2008) (citation omitted) (internal quotation marks omitted). At the same time, we have said that, when deciding an appeal, an appellate court may look to conclusively established facts in the record that the district court order did not evaluate or reference. *See Lehman v. Hansord Pontiac Co.*, 74 N.W.2d 305, 312 (Minn. 1955) ("It is not the province of this court to make or amend findings of fact . . . nor can we assume facts to be proven except in those rare cases where they are conclusively established.").

In this case, we do not find the differences between the court of appeals opinion and district court order material to our conclusion. Mason-Kimmons identifies examples where (he claims) the court of appeals engaged in improper fact-finding. Based on our resolution of the case, however, we need not decide whether the court of appeals improperly found facts. We note, however, that the court of appeals erred when it independently found that Mason-Kimmons bought a gun before the shooting occurred. *Mason-Kimmons III*, 2024 WL 1251736, at \*4. Nothing in the record establishes that Mason-Kimmons owned or bought a gun, and the State never recovered a murder weapon. We do not use this fact in our review.

Mason-Kimmons to plead guilty. Because there is no dispute in this appeal that trial counsel's advice to plead guilty was constitutionally deficient under the first *Strickland* prong, we narrowly focus on whether Mason-Kimmons suffered prejudice from this constitutionally deficient advice. *See Strickland*, 466 U.S. at 694 (stating that even if a defendant's claim succeeds on the first prong, no relief is warranted unless counsel's ineffective representation resulted in prejudice to the defendant); *see, e.g.*, *Scruggs v. State*, 484 N.W.2d 21, 25 (Minn. 1992) (applying the *Strickland* test to determine whether to grant a defendant a new trial on the ground of ineffective assistance of counsel).

While we review a district court's denial of a postconviction petition for an abuse of discretion, we review de novo the *Strickland* analysis because "the performance and prejudice components of the ineffectiveness inquiry [involve] mixed questions of law and fact." *Pearson v. State*, 891 N.W.2d 590, 600 (Minn. 2017) (alteration in original) (quotation omitted); *see also Petersen v. State*, 937 N.W.2d 136, 139 (Minn. 2019) ("We review a district court's denial of a postconviction petition for an abuse of discretion, and we review any embedded issues of law de novo."). Factual findings "made during the course of deciding an ineffective-assistance claim are subject to the clearly erroneous standard." *Pearson*, 891 N.W.2d at 600.

## A.

Our resolution of this case turns in significant part on what Mason-Kimmons must show to prevail on his argument that his trial counsel's constitutionally deficient advice prejudiced him. To assess whether a defendant suffered prejudice in ineffective assistance of counsel cases we conduct a case-by-case analysis considering the totality of the

evidence. *Lee v. United States*, 582 U.S. 357, 367 (2017). To establish prejudice, a defendant who has pled guilty must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome"; the amount of proof required is something less than a preponderance of the evidence. *Strickland*, 466 U.S. at 694; *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). Thus, to show prejudice, Mason-Kimmons must demonstrate that, based on the totality of the circumstances, there is a probability—not proof by a preponderance of the evidence—sufficient to undermine confidence in the fact that he would have pled guilty in the absence of his trial counsel's constitutionally deficient advice.

We focus our inquiry on a defendant's decision-making in choosing to plead guilty; in this case, "what an individual defendant would have done" in the absence of constitutionally deficient advice regarding the guilty plea. *Lee*, 582 U.S. at 367–68. In assessing our confidence that a defendant would have pled guilty in the absence of constitutionally deficient advice, we do not rely *solely* upon a defendant's "*post hoc* assertions . . . about how he would have pleaded but for his attorney's deficiencies." *Id.* at 369. Rather, we "look to contemporaneous evidence to substantiate a defendant's expressed preferences" that he would have gone to trial in the absence of the constitutionally deficient advice. *Id.*

Further, because our focus is on the defendant's decision-making in pleading guilty, our assessment of prejudice "may not turn solely on the likelihood of conviction after trial."

20

*Id.* at 367. In *Lee v. United States*, the United States Supreme Court acknowledged that, "[a]s a general matter, it makes sense that a defendant who has no realistic defense to a charge supported by sufficient evidence will be unable to carry his burden of showing prejudice from accepting a guilty plea." *Id.* at 366–67. The Supreme Court, however, refused to elevate this general proposition to a per se rule for two reasons:

> First, it forgets that categorical rules are ill suited to an inquiry that we have emphasized demands a "case-by-case examination" of the "totality of the evidence." And, more fundamentally, the Government overlooks that the inquiry we prescribed in *Hill v. Lockhart* focuses on a defendant's decisionmaking, which may not turn solely on the likelihood of conviction after trial.

*Id.* at 367 (internal citations omitted). The Supreme Court recognized that even a defendant without "any viable defense" may be willing to proceed to trial. *Id.* "[C]ommon sense (not to mention our precedent) recognizes that there is more to consider than simply the likelihood of success at trial. The decision whether to plead guilty also involves assessing the respective consequences of a conviction after trial and by plea." *Id.*

We also observe that attorneys are critical to criminal defendants navigating the legal environment. *See Gideon v. Wainwright*, 372 U.S. 335, 344 (1963) ("[R]eason and reflection require us to recognize that in our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him."); *Powell v. Alabama*, 287 U.S. 45, 69 (1932) ("Even the intelligent and educated layman has small and sometimes no skill in the science of law."); *Strickland*, 466 U.S. at 685 ("The right to counsel plays a crucial role in the adversarial system embodied in the Sixth Amendment, since access to counsel's skill and

21

knowledge is necessary to accord defendants the ample opportunity to meet the case of the prosecution to which they are entitled." (quotation omitted)); *United States v. Cronic*, 466 U.S. 648, 653–54 (1984) ("Lawyers in criminal cases are necessities, not luxuries . . . . Without counsel, the right to a trial itself would be of little avail . . . ." (internal quotation marks omitted) (footnotes omitted)). The client-attorney relationship is based on trust. *See Strickland*, 466 U.S. at 690. The Constitution protects the right to counsel because it assumes counsel guides and assists a defendant through the adversarial criminal process.

## B.

We turn then to whether, as a matter of law and considering the totality of the circumstances, a probability exists sufficient to undermine confidence that Mason-Kimmons would have pled guilty in the absence of his trial counsel's constitutionally deficient advice. We conclude that such a probability exists.

Before we address the contemporaneous evidence bearing on whether Mason-Kimmons would have pled guilty in the absence of his counsel's deficient advice, however, we address a procedural argument the State raises. The State argues that the district court found that Mason-Kimmons and his trial counsel's *post hoc* assertions at the postconviction evidentiary hearing were not credible and that this finding should end the analysis.

At the postconviction hearing, Mason-Kimmons and his trial counsel testified that Mason-Kimmons knew a conviction and a sentence of life in prison without the possibility of parole were potential consequences of going to trial. Notwithstanding those potential consequences, both Mason-Kimmons and his counsel repeatedly testified that Mason-Kimmons intended to go to trial up to and until his counsel said he would provide

22

ineffective assistance if forced to proceed. They both also testified that Mason-Kimmons's decision to plead guilty was motivated by his counsel's advice to do so because counsel was unprepared for trial. His trial counsel testified that part of the rationale for bringing Mason-Kimmons's case to trial was that he believed Mason-Kimmons was not guilty and that the evidence supported this inference. And Mason-Kimmons testified that his counsel's deficient representation affected his decision by "ma[king] me consider taking a plea agreement" because his other option was to "[g]o to trial and face life in prison with a—with a lawyer who's unprepared."

Although the State explicitly asked the district court to expressly find that Mason-Kimmons's and his attorney's testimony was not credible, the district court made no such finding. The district court did find that the trial prosecutor "credibly testified at the evidentiary hearing that a substantial amount of evidence supported the State's First-Degree Murder case against Mr. Mason-Kimmons." Relying on the district court's finding that the trial prosecutor credibly testified about the evidence supporting the State's case, the State asserts that the district court must have *also* believed the prosecutor's alternative theories for why Mason-Kimmons pled guilty and impliedly determined that it did not believe the defense's testimony on any topic. We are not persuaded.

The district court's credibility determination was very specific: The prosecutor testified credibly regarding the State's *evidence*. The district court made no credibility findings about Mason-Kimmons's or his trial counsel's testimony regarding Mason-Kimmons's mental state when he decided to plead guilty. We will not infer from the district court's specific, express credibility finding about the prosecutor's testimony

23

concerning the strength of the State's evidence that the district court also made a broad, implicit credibility finding that other witness testimony concerning Mason-Kimmons's subjective mental states was not credible.

Having addressed the State's procedural argument, we consider whether Mason-Kimmons's argument relies *solely* on *post hoc* assertions about how he would have pled but for his attorney's deficiencies. For the following reasons, we conclude that it does not.

During his plea hearing, Mason-Kimmons stated his concern about his lawyer's preparedness, noting that his attorney had not spoken to newly discovered witnesses:

> THE DISTRICT COURT: And like I said, it's a big decision and I know there's been some time pressure. I don't want to pressure you into it. And I know it seems like I've been trying to move the case forward. But as I mentioned a couple of times, I recognize this is a big case for you and for [your trial counsel]. And I don't want the pressure of the moment to be the only thing that allows you to make your decision. Do you know what I'm saying?
>
> THE DEFENDANT: I hear what you're saying, but *you didn't give us no time to speak to the other witnesses*, though. Yeah.

(Emphasis added.) Mason-Kimmons's statement that he was pleading guilty because his trial attorney had not spoken to witnesses constitutes contemporaneous evidence supporting his present claim that he pled guilty because his attorney was not prepared.[11]

---

[11] Relying on Mason-Kimmons's affirmative statement at the plea hearing that he shot and killed Lacy, the State argues he cannot now claim that he decided to plead guilty based on his trial counsel's constitutionally deficient advice. We disagree. Whether a defendant stated at a plea hearing that he committed an offense is a different inquiry from the reason he chose to plead guilty. Consequently, whether we believe Mason-Kimmons committed the crime to which he pled guilty has no bearing on the issue presented here, and we express no opinion about that ultimate question for a jury.

24

We therefore conclude that Mason-Kimmons's argument does not rely solely on *post hoc* assertions.

We continue our totality of the circumstances analysis by looking to other contemporaneous evidence that bears on whether a probability exists sufficient to undermine confidence that Mason-Kimmons would have pled guilty in the absence of his trial counsel's constitutionally deficient advice. This evidence includes the plea negotiation timeline, the strength of the State's case, and the possibility of a viable defense for trial.

We first turn our attention to the plea negotiation timeline. The State first made Mason-Kimmons an offer to plead guilty on August 1, 2018. Under that offer, Mason-Kimmons would have been sentenced to 366 months in prison rather than facing life in prison without the possibility of release. *See Lee*, 582 U.S. at 367 ("The decision whether to plead guilty also involves assessing the respective consequences of a conviction after trial and by plea."). He did not *respond* to that offer nor suggest that he was open to negotiating a plea until August 10, the day after his trial counsel stated that he was not prepared for trial and would provide ineffective assistance if forced to proceed. Between August 1 and August 9, Mason-Kimmons learned about significant developments—including W.S.'s recantation and the district court's denial of Mason-Kimmons's continuance motion—and yet these events did not prompt Mason-Kimmons to engage with the State's plea offer. The parties did not reach a plea agreement until August 13, at which time Mason-Kimmons accepted the same 366-month prison sentence offered on August 1. Mason-Kimmons's decision not to consider any guilty plea until after trial counsel told him

counsel was unprepared and could not effectively represent him undermines our confidence that Mason-Kimmons would have pled guilty in the absence of his counsel's constitutionally deficient behavior and advice.

On the other hand, Mason-Kimmons agreed to plead guilty *after* the state offered E.R.D. a reduced charge and probationary sentence. Though the record does not clearly show when that additional benefit was placed on the table–whether it was before or after defense counsel's constitutionally deficient advice–we conclude that the additional benefit *increases* to some degree our confidence that Mason-Kimmons pled guilty for reasons other than his counsel's constitutionally deficient advice.

Thus, in considering the totality of the record to assess whether there exists a sufficient probability to undermine confidence that Mason-Kimmons would have pled guilty in the absence of his trial counsel's constitutionally deficient advice, we consider both Mason-Kimmons's consistent refusal to even discuss a plea deal offering the same reduction in sentence to which he ultimately agreed and the State's agreement to a new term of reduced punishment for E.R.D. *See Lee*, 582 U.S. at 367.

Next, we discuss the strength of the State's case. The court of appeals and district court concluded that there is substantial evidence to support that Mason-Kimmons shot and killed Lacy with intent and premeditation: Mason-Kimmons and Lacy had been feuding for years, the feud had become physical, Mason-Kimmons told E.R.D. that he planned to kill Lacy, the car that dropped the shooter off and took them away from the crime scene

26

belonged to E.R.D., and the police found .38-caliber ammunition in Mason-Kimmons's apartment.[12]

A significant piece of the State's evidence—W.S.'s statement telling the police, despite earlier denials, that Mason-Kimmons shot Lacy—warrants a more specific discussion. The defense claimed that W.S. initially told the defense investigator that Mason-Kimmons was not the shooter. W.S. originally told the police he was not even in Peavey Park when the shooting occurred and did not know who shot Lacy. Just three days later, W.S. changed his story when the police interviewed him in the Hennepin County jail after his arrest for a probation violation. The original defense interview, paired with W.S.'s statements to the police expressing his hope that testifying would help with his outstanding probation violation, raise questions about W.S.'s credibility that Mason-Kimmons could use to impeach W.S. And, as noted, Mason-Kimmons continued to refuse to engage in

---

[12] In its brief, the State argues its case is stronger than described. For instance, the State points to the blue hoodie found in Mason-Kimmons's apartment to tie him to the shooting. The hoodie recovered from Mason-Kimmons's apartment, however, displayed orange lettering not mentioned by any eyewitness nor seen in the surveillance video from the shooting. Although the hoodie might match some characteristics of the one the shooter wore, it is not particularly strong evidence connecting Mason-Kimmons to the shooting.

In addition, at the time Mason-Kimmons pled guilty, the district court had not ruled on his motions to suppress evidence taken from Mason-Kimmons's home, including the blue sweatshirt and ammunition. Further, the district court had not ruled on motions to suppress cellphone and cell-tower records or the phone call recording in which Mason-Kimmons said he planned to kill Lacy. The fact that the district court had not ruled on those motions—keeping open the possibility that some of the State's evidence may not be admitted—diminishes, to some extent, the strength of the State's case for purposes of assessing whether Mason-Kimmons decided to plead guilty for some reason other than his lawyer's ineffective conduct. We express no opinion on the admissibility of such evidence at a future trial. We merely consider the circumstances in which Mason-Kimmons made his decision to plead guilty.

plea negotiations even after learning that W.S. had recanted his initial statements to the police. By failing to acknowledge W.S.'s changing story, the court of appeals overstated the strength of the State's case.

Finally, we discuss the possibility of a viable defense at trial. Mason-Kimmons was not without any realistic defense to the State's charges that he shot and killed Lacy. *See id.* (noting that "[a] defendant without any viable defense will be highly likely to lose at trial" and therefore "will rarely be able to show prejudice from accepting a guilty plea"). While Mason-Kimmons did not locate the witnesses his team was searching for before the beginning of trial—in part because his trial counsel failed to timely gather and sufficiently review discovery—from the initial police interview the defense was aware of witnesses who described the shooter as a lanky, six-foot to six-foot-two-inch tall, dark-skinned Black man.[13] The defense also had the surveillance video, which the defense argues corroborates that description. The defense asserts that the descriptions do not match Mason-Kimmons appearance.

Having discussed the totality of the record, we apply the required legal standard to the question of prejudice before us: Is there a probability (something less than a likelihood) sufficient to undermine our confidence in the fact that Mason-Kimmons would have pled guilty in the absence of his trial counsel's constitutionally deficient advice to plead guilty because trial counsel was unprepared?

---

[13] The record does not support the court of appeals' determination that Mason-Kimmons had no reliable witnesses to support his defense.

This is a close question. During his plea hearing, Mason-Kimmons made a statement indicating that, consistent with his trial counsel's advice, he pled guilty because his trial counsel told him he was unprepared and that, as a result, Mason-Kimmons would not get a fair trial. We also consider that, before his trial counsel's constitutionally deficient conduct, Mason-Kimmons refused to even consider an offer to plead guilty in return for precisely the sentence to which he ultimately agreed—even though he learned, after the initial plea offer, that, among other things, W.S. had changed his story and was now telling the police that Mason-Kimmons was the shooter. Finally, although there is substantial evidence that Mason-Kimmons was involved in shooting Lacy, at the time Mason-Kimmons made his decision to plead guilty it was possible that the district court would exclude some of the State's evidence. Mason-Kimmons also could introduce witness testimony describing the shooter (consistent with the video) in ways that do not match Mason-Kimmons's appearance. On these unique facts, we conclude that Mason-Kimmons was prejudiced by his trial counsel's constitutionally deficient performance. Accordingly, we hold that the district court abused its discretion when it denied Mason-Kimmons's postconviction petition to withdraw his guilty plea based on a claim of ineffective assistance of counsel. We remand to the district court so that Mason-Kimmons may be allowed to withdraw his plea.

**CONCLUSION**

For the foregoing reasons, we reverse the decision of the court of appeals and remand to the district court for further proceedings consistent with this opinion.

Reversed and remanded.

GAÏTAS, J., took no part in the consideration or decision of this case.